# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-2222
_____

Ernest Lee Johnson,

*Plaintiff   Appellant,*

v.

Anne L. Precythe; Alana Boyles; Stanley Payne,

*Defendants   Appellees.*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: September 24, 2019
Filed: April 1, 2020

_____

Before SMITH, Chief Judge, BEAM and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

This case is on remand from the Supreme Court for further consideration in light of *Bucklew v. Precythe*, 139 S. Ct. 1112 (2019). Appellant Ernest Johnson is a Missouri prisoner under a sentence of death. He sued state officials to challenge the constitutionality of Missouri's method of execution as applied to him. The district

court[1] granted the State's motion to dismiss for failure to state a claim, but we ruled in a previous decision, *Johnson v. Precythe*, 901 F.3d 973 (8th Cir. 2018), that Johnson adequately pleaded a claim under the Eighth Amendment as interpreted in *Glossip v. Gross*, 135 S. Ct. 2726 (2015), and *Baze v. Rees*, 553 U.S. 35 (2008). We now conclude in light of the Supreme Court's latest explication in *Bucklew* that the district court's judgment should be affirmed.

*Bucklew* confirmed this court's view that the test for challenges to lethal injection protocols announced in *Baze* and *Glossip* governs as-applied challenges like Johnson's. 139 S. Ct. at 1126-29. Therefore, to prove a claim under the Eighth Amendment, a prisoner must prove two elements. First, he must show that the State's method of execution "presents a risk that is '*sure or very likely* to cause serious illness and needless suffering,' and give rise to 'sufficiently *imminent* dangers.'" *Glossip*, 135 S. Ct. at 2737 (quoting *Baze*, 553 U.S. at 50). The risk must be "a 'substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'" *Id*. (quoting *Baze*, 553 U.S. at 50). Second, "a prisoner must show a feasible and readily implemented alternative method of execution that would significantly reduce a substantial risk of severe pain and that the State has refused to adopt without a legitimate penological reason." *Bucklew*, 139 S. Ct. at 1125.

As we explained in our first opinion, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face where "the plaintiff pleads factual content that allows the court to draw the

---

[1]The Honorable Greg Kays, Chief Judge, United States District Court for the Western District of Missouri.

reasonable inference that the defendant is liable for the misconduct alleged," *id.*, and "raise[s] a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

At the same time, however, the rules of procedure continue to allow notice pleading through "a short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting Fed. R. Civ. P. 8(a)(2)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). We assume in our analysis that the factual allegations in the complaint are true. *Twombly*, 550 U.S. at 556.

In our previous decision, we concluded that Johnson adequately pleaded both elements of a claim under the Eighth Amendment. As to the first element, his second amended complaint alleges that he suffers from a seizure disorder, and that "there is a substantial and unjustifiable risk that the lethal injection drugs will trigger violent and uncontrollable seizures that are extremely painful and will lead to an ineffective and excruciating execution." Relying on a supporting affidavit from a medical expert, Johnson asserts that "a substantial risk of serious harm will occur during his execution as a result of a violent seizure that is induced by pentobarbital," one of the drugs used under the protocol. The expert predicts "a violent seizure that is induced by Pentobarbital injection," opines that a seizure "would occur" during Johnson's execution, and states that such seizures are "severely painful." We concluded that for purposes of notice pleading under Rule 8, Johnson raised a plausible allegation that the State's method of execution will cause severe pain. Whether Johnson can *prove* the claim through admissible evidence, we said, is a different matter to be addressed at a later stage of the proceedings. 901 F.3d at 978.

On the second element, we concluded that Johnson adequately alleged that nitrogen-induced hypoxia was a feasible and readily implemented alternative that would significantly reduce a substantial risk of severe pain. We cited Johnson's allegations that nitrogen gas is readily available on the open market, could be introduced through a "medically enclosed device to be placed over the mouth or head of the inmate," and would not require construction of a new facility. Under the notice pleading regime of the federal rules, we concluded, Johnson's complaint need not set forth a detailed technical protocol for the administration of nitrogen gas to state a claim. Johnson also alleges that nitrogen hypoxia would ameliorate the risk of severe pain allegedly caused by pentobarbital, because "the use of lethal gas would not trigger the uncontrollable seizures and convulsions." We thus determined that Johnson sufficiently alleged the second element, although whether he could *prove* that element was again a different matter to be addressed at a later stage of the proceedings. 901 F.3d at 979-80.

We now conclude that the intervening decision in *Bucklew* requires a different conclusion on the second element of Johnson's claim, because nitrogen-induced hypoxia is an "entirely new method" of execution that has "'never been used to carry out an execution'" and has "'no track record of successful use.'" *Bucklew*, 139 S. Ct. at 1130 (quoting *McGehee v. Hutchinson*, 854 F.3d 488, 493 (8th Cir. 2017) (en banc) (per curiam)). In our first opinion, we understood *Glossip* and *Baze* to mean that the sufficiency of a proposed alternative method under the second element turned on whether the prisoner could prove that the particular method was feasible and readily implemented, and would significantly reduce a substantial risk of severe pain. *See Glossip*, 135 S. Ct. at 2737 (quoting *Baze*, 553 U.S. at 52). This was essentially the State's position on the first go-round too, for it argued that Johnson could not show as a factual matter that the untested method of nitrogen hypoxia would significantly reduce a substantial risk of severe pain. That a method was new could make it more difficult for the prisoner to meet his burden, we thought, *see McGehee*,

-4-

854 F.3d at 493, but did not foreclose the claim as a matter of law at the pleading stage.

*Bucklew* superseded that reasoning. The Court explained that the question under the second element is not only whether there is a feasible and readily implemented alternative method of execution that would significantly reduce a substantial risk of severe pain. The prisoner also must show that the alternative method is one "that the State has refused to adopt without a legitimate penological reason." 139 S. Ct. 1125. The Court then concluded that an "independent" reason why Bucklew's claim failed was that he "sought the adoption of an entirely new method," namely, nitrogen hypoxia. *Id.* at 1129-30. The Court ruled categorically that "choosing not to be the first to experiment with a new method of execution is a legitimate reason to reject it," and explained that the Eighth Amendment "does not compel a State to adopt 'untried and untested' (and thus unusual in the constitutional sense) methods of execution." *Id.* at 1130 (quoting *Baze*, 553 U.S. at 41).

We conclude that this aspect of *Bucklew* forecloses Johnson's claim. Johnson's proposed alternative method of execution is nitrogen-induced hypoxia, the same method proposed by Bucklew. The Court ruled that the method's novelty was a "legitimate" reason for the State to decline to switch from its current method of execution. *Id.* at 1129. Bucklew's claim failed for that reason alone, "independent" of whether nitrogen hypoxia was a feasible and readily implemented method that would significantly reduce a substantial risk of severe pain. *Id.* Although Johnson's complaint was dismissed at the pleading stage, rather than on a motion for summary judgment, the procedural posture does not distinguish *Bucklew* on this point. Johnson does not allege that any State has carried out an execution by use of nitrogen gas; he asserts only that the State of Oklahoma has *authorized* nitrogen-induced hypoxia as a lawful method. Johnson's claim thus falls squarely within the alternative holding of *Bucklew* that the Eighth Amendment does not require a State to adopt an untried and untested method of execution.

-5-

Johnson argues that we should not consider the novelty of his proposed method as a legitimate penological justification, because the State did not move to dismiss the complaint on this ground. We cannot accept that contention. In *Bucklew* itself, the Supreme Court affirmed the dismissal of the prisoner's complaint on the ground that nitrogen hypoxia was not an adequate alternative, even though the State, in the district court and the court of appeals, "did not dispute for purposes of that litigation that nitrogen-induced hypoxia is a feasible and readily implemented alternative method of execution." *Johnson*, 901 F.3d at 979; *see Bucklew v. Precythe*, 883 F.3d 1087, 1094 (8th Cir. 2018); *Bucklew v. Lombardi*, No. 14-8000-CV-W-BP, slip op. at 9 (W.D. Mo. June 15, 2017). We therefore conclude that the judgment in this case likewise may be affirmed on any ground supported by the record.

Johnson last argues that we should remand the case so that he may amend his second amended complaint in light of *Bucklew*. He suggests that it was unsettled before *Bucklew* whether a prisoner was limited to pleading alternative methods of execution that were authorized by state law. With *Bucklew* having explained that there is no such limitation, 139 S. Ct. at 1128, he asks for another chance to plead an alternative method. We are not convinced that *Bucklew* constitutes an intervening change in law that warrants granting Johnson a third opportunity to amend. Neither the Supreme Court nor this court ever said that the universe of available alternatives was limited by state law. When we first addressed the point, after Johnson filed his latest amended complaint, we said the opposite. *McGehee*, 854 F.3d at 493. Johnson filed three complaints in the district court and had ample opportunity to allege any alternative method that he wished to pursue. Especially given *Bucklew*'s emphasis that "[t]he proper role of courts is to ensure that method-of-execution challenges to lawfully issued sentences are resolved fairly and expeditiously," 139 S. Ct. at 1134, we conclude that the case should be closed.

For these reasons, the judgment of the district court is affirmed.

_____